UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60038-WILLIAMS/VALLE

MY. P.I.I., LLC, as owner of
the M/Y PURE INSANITY,

    Plaintiff,

v.

MARKEL AMERICAN
INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon: (i) Defendant Markel American Insurance Company's Motion for Summary Judgment (ECF No. 27) ("Defendant's Motion for Summary Judgment"); and (ii) Plaintiff's Objection to Expert Evidence Relied Upon in Defendant's Motion for Summary Judgment and for Extension of Time (ECF No. 31) ("Plaintiff's Motion to Strike") (together, the "Motions"). United States District Judge Kathleen Williams has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 29); *see also* 28 U.S.C. § 636. The Court has reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised. For the reasons set forth below, the undersigned recommends that: (i) Defendant's Motion for Summary Judgment be **DENIED**; and (ii) Plaintiff's Motion to Strike be **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND

On January 8, 2020, Plaintiff MY. P.I.I., LLC ("Plaintiff"), the owner of M/Y Pure Insanity ("M/Y Pure Insanity" or the "Vessel"), filed the instant action against Defendant Markel American Insurance Company ("Defendant"), alleging a breach of contract under insurance policy number CG3814A18MZA for the period December 1, 2018 to December 1, 2019 (the "Policy"). *See generally* (ECF Nos. 1, 1-1 at 3).

By way of background, Plaintiff's one-count Complaint alleges that on or about February 15, 2019, M/Y Pure Insanity was hauled out of the water at Lauderdale Marine Center (the "Marine Center") for a required five-year annual ABS inspection. *Id*. ¶ 5. Plaintiff engaged H&R Marine Engineering ("H&R") to complete this inspection. *Id.* ¶ 6. During the process of removing the port coupler for the inspection, the seal on the coupler breached and could not hold the pressure necessary to be removed from the sleeve on the propeller shaft. *Id*. ¶ 7. Thus, H&R subcontracted with K&G Marine, LLC ("K&G") to alter, repair, and cut the port coupler to the sleeve. *Id*. ¶ 8. In March 2019, while making this alternation, K&G negligently penetrated the sleeve and cut into the propeller shaft. *Id*. ¶ 9. Defendant accepted coverage for the damage incurred in connection with damage to the Vessel's propeller shaft during the ABS inspection and paid Plaintiff for the covered losses.[1] *See* (ECF No. 27 at 2).

Thereafter, Plaintiff submitted to Defendant a supplemental proof of loss (for approximately $249,000) for an additional claim for UV damage to M/Y Pure Insanity. *Id.* at 3. According to Plaintiff, the M/Y Pure Insanity "remain[ed] on the hard in Lauderdale Marine

---

[1] Plaintiff also claimed that it sustained other damages casually related to K&G and H&R's negligence beyond those paid by Defendant (e.g., loss of charter income, captain and crew salaries, and UV damage to the Vessel). *See* (ECF No. 27 at 2-3). Those claims are the basis of a separate lawsuit brought by Plaintiff, which is also pending in this District. *See MY. P.I.I. LLC v. H&R Marine Eng'r, Inc.*, No. 19-CV-61946-RKA (S.D. Fla. 2019), Amended Complaint, ECF No. 22.

Center, exposed to damaging UV light from the sun," while waiting to be repaired. (ECF Nos. 1 ¶ 10, 27 at 3). Defendant denied Plaintiff's supplemental claim for UV damage and disclaimed coverage. (ECF No. 27 at 3). Plaintiff then filed the instant case.

Defendant filed its Motion for Summary Judgment raising two arguments. *See generally* (ECF No. 27). First, Defendant argues that the Policy does not cover UV damage purportedly resulting from sun exposure because exposure to sunlight is not an "occurrence" or accident within the meaning of the Policy. *See* (ECF Nos. 27 at 8-11, 51 at 4-8). Defendant also argues that, even if the loss constitutes an "occurrence" that could be covered by the Policy, Plaintiff's claims are nonetheless excluded under the Policy's exclusion for "gradual and sudden loss." (ECF Nos. 27 at 11-13, 51 at 8-10). According to Defendant, the UV damage to the Vessel was due to "normal wear and tear," in that the Vessel's original coating system had exceeded its service life. *See* (ECF Nos. 27 at 1, 3-4, 12-13, 51 at 8-10).

In opposing summary judgment on the merits, Plaintiff argues that "the M/Y Pure Insanity was placed on the hard due to a fortuitous accident causing damage to a shaft and coupler, [after which the Vessel] sustained continuous and repeated [sun] exposure to . . . the paint and fairing."[2] (ECF No. 47 at 3). According to Plaintiff, repeated exposure to the same harmful condition (e.g., one to seven months exposed to heat and UV rays) is an "occurrence under the Policy," which defines "accident" as including "continuous and repeated exposure to substantially the same general harmful condition." *Id.* at 3, 5-6. Plaintiff further asserts that the paint and fairing damage

---

[2] Plaintiff initially filed an "objection" to some of the evidence included in Defendant's Motion for Summary Judgment and requested an extension of time to respond to the merits of the Motion. *See generally* (ECF No. 31). Without ruling on Plaintiff's Motion to Strike, the undersigned ordered that Plaintiff respond to the merits of Defendant's Motion for Summary Judgment. *See* (ECF No. 43). For the reasons set forth below, Plaintiff's Motion to Strike is granted in part. *See infra* section III.A.

3

to the M/Y Pure Insanity was not the result of ordinary wear and tear, but rather resulted from the Vessel, which was normally stored under cover, being "stranded out of the water on asphalt, exposed to the elements."[3] *Id.* at 6.

## II. LEGAL STANDARDS

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the nonmoving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

The movant shoulders the initial burden of demonstrating the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the movant satisfies this burden, "the burden shift[s] to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Rule 56 requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Mid-Continent Cas. Co. v Arpin & Sons, LLC*, 261 F. Supp. 3d 1245, 1249-50 (S.D. Fla. 2017) (quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Thus, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 1250 (citing *Anderson*, 477 U.S. at 248).

---

[3] The Vessel was usually stored in the water in a covered shed. (ECF No. 47 at 6).

In considering a motion for summary judgment, it is not the Court's duty or function to try or decide factual issues. *Gross v. S. Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969).[4] Rather, "[i]ts only duty is to determine whether or not there is an issue of fact to be tried." *Id.* Further, the Court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Stanley Indus., Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570, 1572 (S.D. Fla. 1992) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). If a genuine issue of fact exists for trial, summary judgment should not be granted. *See* Fed. R. Civ. P. 56(a). An issue of fact is genuine if the record taken as a whole could lead a reasonable jury to find for the nonmoving party. *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (citation omitted).

### III. DISCUSSION

#### A. The Motion Should be Determined on the Merits and the Testimony of Mr. Phillips Is Unnecessary to the Summary Judgment Determination

Before turning to the merits of Defendant's Motion for Summary Judgment, the undersigned addresses two procedural matters. First, Defendant argues that Plaintiff's substantive response to Defendant's Motion for Summary Judgment was untimely. *See* (ECF No. 51 at 1-4). However, in the interest of justice and efficient case management, the undersigned finds that the

---

[4] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981), this Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981.

issues should be determined on the merits after considering the full briefing on the Motions.[5] In this regard, the undersigned recognizes that Plaintiff's delay in responding to Defendant's motion may have been compounded by the Court's deferred ruling on Plaintiff's objection to Defendant's reliance on evidence related to Mr. Phillips. Accordingly, the Court declines Defendant's invitation to find Plaintiff's Response to Defendant's Motion for Summary Judgment untimely.

Next, the Court addresses Plaintiff's Motion to Strike. *See generally* (ECF No. 31). At the heart of Plaintiff's motion is an email exchange that Defendant references in support of its Motion for Summary Judgment. (ECF No. 31 at 3). In this email exchange, Mr. Phillips (Plaintiff's surveyor) expresses his "opinion that the . . . disposition of the yacht's finish is not sudden and accidental and is related to service life." (ECF No. 28-6 at 4). Plaintiff objects to Defendant's reliance on this evidence, arguing that Defendant did not timely disclose Mr. Phillips as "an expert" and cannot therefore use Mr. Phillips in support of summary judgment. *See generally* (ECF No. 31). Thus, Plaintiff requests that the Court strike Mr. Phillips' testimony as "an expert." *Id.*[6]

Defendant opposes striking Mr. Phillips' testimony and argues that Mr. Phillips is identified in both Defendant's Initial Disclosures and Plaintiff's Answers to Defendant's Interrogatories as a fact witness (not an expert witness) with knowledge of the UV damage. *See* (ECF Nos. 32 at 2-3, 32-1 at 5, 34-2 at 6). In addition, Defendant emphasizes that Plaintiff was aware of Mr. Phillips' statements concerning the cause of the UV damage even before the litigation commenced because his statements are contained in an email conversation between Mr. Phillips,

---

[5] Plaintiff substantively responded to Defendant's Motion for Summary Judgment only after an Order from the Court requiring that it address the merits of the motion. *See* (ECF No. 43).

[6] Plaintiff concedes, however, that David V. Revay of Revay Coating Consultants, Inc. is an expert whose identity Defendant properly disclosed. (ECF No. 31 at 2).

6

James Leonardo (owner of the Vessel), Jason Downing (Captain of the Vessel), and others. (ECF No. 32 at 4).

Based on the record before the Court, there is sufficient evidence besides Mr. Phillips' testimony for the undersigned to evaluate Defendant's Motion for Summary Judgment. For example, Defendant's Motion for Summary Judgment refers to the testimony of Mr. Revay, Defendant's undisputed expert. *See, e.g.*, (ECF Nos. 27 at 11, 13, 31 at 2). Like Mr. Phillips, Mr. Revay opines that the UV damage to the Vessel was caused by the end of service life of the Vessel's coating, coupled with normal maritime wear and tear. (ECF Nos. 27 at 11, 13, 28-4). Thus, the undersigned need not determine for purposes of summary judgment whether Mr. Phillips was timely disclosed as an "expert" who could opine on the cause of the UV damage.

Nonetheless, even assuming, without deciding, that Mr. Phillips was not timely disclosed as an "expert" who could opine on the cause of the UV damage, the undersigned will exercise its discretion and not consider Mr. Phillips' testimony in its evaluation of Defendant's Motion for Summary Judgment. *See, e.g., Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004) (noting that in exercising its discretion when requested to exclude a non-disclosed witness, the Court considers "(1) the importance of the testimony, (2) the reasons for the [party']s failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify."). To be clear, the undersigned excludes Mr. Phillips' testimony only for purposes of ruling on Defendant's Motion for Summary Judgment, without prejudice to the District Court's later determination of the proper use, if any, of Mr. Phillips'

testimony.[7] Thus, the undersigned recommends that Plaintiff's Motion to Strike Mr. Phillips' testimony be granted in part without prejudice, as set forth in this Report.

### B.    The Terms of Coverage Under the Policy

The undersigned next turns to the substantive arguments raised in Defendant's Motion for Summary Judgment regarding coverage under the Policy. Here, the Policy is an "all-risk" policy that provides coverage from December 2018 through December 2019, subject to other terms, conditions, and exclusions. (ECF No. 27 at 6). In relevant part, the Policy provides that:

> [Defendant] will provide [Plaintiff] with all risk coverage for sudden, accidental and direct physical loss of or damage to the **Yacht** that is insured under this policy, occurring within the **Navigational Limits**, including the land portions associated with those **Navigational Limits**, caused by an **Occurrence** during the policy period, up to the limits of Property Coverage shown on the Declarations Page unless stated otherwise, subject to the conditions, exclusions or limitations of the **Policy**.[8]

(ECF Nos. 27 at 7, 28-7 at 3).

The Policy further defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition(s)." *Id.* Lastly, the Policy provides coverage exclusions for "Gradual or sudden loss." *Id*. This exclusion provides that:

> [Defendant] will not pay for any loss caused by, resulting from or arising out of [Plaintiff's] failure to maintain the Yacht in good condition, wear and tear, gradual deterioration, galvanic corrosion, rust, dampness of atmosphere, Organic Pathogens, fiberglass osmosis or blistering. However, We will pay for ensuing physical loss caused by fire, explosion, sinking or stranding unless another exclusion applies.

*Id*.

---

[7] Further, Plaintiff's request for an extension on the time to file a response to Defendant's Motion for Summary Judgment is denied as moot.

[8] Words appearing in **bold** appear in bold in the Policy and have the meaning shown in the Definitions section of the Policy. (ECF No. 27 at 6-7).

### C. An Issue of Fact Exists Regarding Whether UV Damage Is an "Occurrence" Under the Policy

An "all-risk" policy, like the one at issue in this case, is one that provides coverage against all risks, the words typically being inserted in writing, covering every loss that may happen except by the fraudulent acts of the insured. *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996) (citation omitted); *Egan v. Washington Gen. Ins. Corp.*, 240 So. 2d 875, 878 (Fla. 4th DCA 1970). Accordingly, "an all-risk policy will . . . be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Egan*, 240 So. 2d at 878.

Defendant argues that the UV damage to the Vessel was not a fortuitous event. Rather, according to Defendant, the evidence establishes that the Dupont coating system on the Vessel had reached the expiration of its "service life," which was expected to be between seven and ten years. (ECF No. 27 at 11). It is undisputed that the Dupont coating system on the M/Y Pure Insanity is the original coating from when the Vessel was built in 2008. *Id*. Although disputed by Plaintiff, Defendant asserts that all superyacht coating systems need to be repainted or renewed once the system reaches its expected end of service life.[9] *Id*. at 5, 11, 13. In support of its motion, Defendant relies on the testimony of its expert David Revay[10] that Plaintiff's loss was "not sudden

---

[9] According to Plaintiff, this statement fails to consider the individual circumstances of maintenance and sun exposure for a particular vessel and does not apply to M/Y Pure Insanity, which sailed only 12 weeks per year and was otherwise stored in a covered shed when not in use. (ECF No. 46 ¶ 12). Plaintiff asserts that the Vessel's limited exposure to sunlight factors into the condition of the Vessel's coating, regardless of the age of the coating. (ECF No. 46 ¶¶ 48, 49).

[10] As noted above, the undersigned has not considered the testimony of Mr. Phillips in determining Defendant's Motion for Summary Judgment. *See supra* section III.A.

or accidental," but rather related to the expiration of the service life of the coating system. *Id*. at 11. In his Declaration in Support of Defendant's Motion for Summary Judgment, Mr. Revay declared, in relevant part:

> 6. The coating system used on the [Vessel] was designed to handle everything from corrosion, chemicals, acids, salt water, salt fog, extreme high and low temperatures, expanding and contracting with the fluctuating exposures, and more. These factors play a major role in the duration of the coating system's service-life performance.
>
> 7. The expected normal service-life of the [Vessel's] superyacht coating system is between 7 and 10 years. Overtime, due to the exposure of the conditions referenced above, particularly from UV rays, the coating system will experience normal wear and degradation.
>
> 8. Notably, a vessel that is regularly used, but is properly cared-for (according to the paint manufacturer's aftercare recommendations), will lose 10% of the vessel's average gloss-levels, per year. As such, superyacht coating systems on any vessel . . . need to be renewed once the system reaches its expected end of service life . . . .

(ECF No. 28-4 at 3). Mr. Revay concluded that the Vessel's "superyacht coating system has exceeded the coating system's service life," and that the coating system will continue to degrade due to normal wear and tear, regardless of whether the superyacht is regularly used or not or stored under cover during non-use. *Id.* ¶¶ 19, 21.

In opposing Defendant's Motion for Summary Judgment, Plaintiff argues that the Policy's definition of an "occurrence" includes repeated exposure to harmful conditions, such as heat and UV rays. (ECF No. 47 at 3). Plaintiff relies on the testimony of the Vessel's captain (Jason Downing) and Plaintiff's expert (Anthony Rossitto) to argue that the damage first appeared on the Vessel within one to four months of the Vessel being "on the hard" at the Marine Center for repairs between February and June 2019. *Id*. at 5. More specifically, according to Captain Downing, the brown spots and cracking on the Vessel did not exist before the Vessel went into the Marine Center for repairs in February 2019. (ECF No. 46 ¶¶ 34-36). Captain Downing further testified that the brown spots on the Vessel were from excessive heat from the sun. *Id*. ¶ 38.

10

Similarly, Mr. Rossitto, Plaintiff's expert who inspected the M/Y Pure Insanity several times, testified that the cracks on the Vessel looked "relatively new" because they were not chalky and appeared to be due to shrinkage in the way of high-stress areas. *Id.* ¶ 46. Mr. Rossitto further opined that the cracking in the fairing indicated shrinkage due to exposure to the sun. *Id.* ¶¶ 48, 53. More specifically, Mr. Rossitto testified that "because [the Vessel] was exposed to the sun in an accelerated process for an extended period of time, . . . the shrinkage happened more rapidly and resulted in the release of cracking." *Id.* ¶ 54.

Against this conflicting testimony regarding the cause of the UV damage to the Vessel (i.e., whether it was the expiration of the coating's service life or the "accelerated" exposure to the sun and UV rays for several months while the Vessel was at the Marine Center for repairs), the undersigned finds that there is, at a minimum, a question of fact that precludes summary judgment. *See, e.g., Egan*, 240 So. 2d at 876 (noting that it is not the burden of the trial court to decide disputed issues of fact, but to grant summary judgment only if no genuine issue exists); *see also Kallas v. Carnival Corp.*, No. 06-CV-20115, 2009 WL 10668178, at *10 (S.D. Fla. Jan. 14, 2009), *report and recommendation adopted*, 2009 WL 10668179 (S.D. Fla. Mar. 4, 2009) (denying summary judgment where purported inconsistencies in expert evidence was for the jury to resolve by assessing the experts' credibility, considering the facts and the source of materials on which they base their opinions, and accepting or discounting those opinions in the context of the case as a whole ); *Stuart Cay Marina v. M/V Special Delivery*, 510 F. Supp. 2d 1063, 1074 (S.D. Fla. 2007) (denying summary judgment where there was conflicting expert testimony); *Int'l Ship Repair*, 944 F. Supp at 893 (denying summary judgment where insurer failed to meet its burden to show no genuine issue of material fact).

### D. An Issue of Fact Exists on Whether the "Occurrence," If Any, Falls Under the "Wear and Tear" Exclusion

Even if the UV damage to the Vessel is found to be an "Occurrence" that was covered by the Policy, the Policy contains an exclusion for "wear and tear" and "gradual deterioration." (ECF Nos. 27 at 7, 28-7 at 3). Defendant argues that "wear and tear," although not defined in the Policy, is the process of ordinary or natural deterioration. (ECF No. 27 at 12). According to Defendant, the Vessel's coating system had exceeded its service life, so that the UV damage sustained was due to normal wear and tear over time and exposure to the maritime environment. (ECF Nos. 27 at 12-13, 51 at 9).

In opposing Defendant's argument that the Policy's coverage exclusion applies, Plaintiff emphasizes that exclusionary clauses are narrowly construed under Florida law in favor of coverage.[11] (ECF No. 47 at 4). Here, Plaintiff asserts that Defendant has failed to meet its burden to establish that the Policy's exclusion for wear and tear applies. *Id.* at 6. To support its argument, Plaintiff relies on *Egan v. Washington General Insurance Corporation*, 240 So. 2d 875 (Fla. 4th DCA 1970) for the proposition that whether a deterioration period of 10 months was normal or extraordinary required testimony, which precluded summary judgment. *Id.* at 7. In reply to Plaintiff's argument, Defendant attempts to distinguish *Egan* on its facts. *See* (ECF No. 51 at 9). The undersigned, however, finds *Egan* instructive. In *Egan,* the court concluded that an issue of fact precluded summary judgment where coverage was possible under the policy based on potentially negligent repairs. *Egan*, 240 So. 2d at 878. The *Egan* court further noted that even where the physical evidence is uncontradicted, in some circumstances, the facts may be susceptible

---

[11] Although the parties dispute whether Florida or New York law applies for purposes of summary judgment, *see* (ECF Nos. 47 at 4 n.2, 51 at 4 n.2), Plaintiff asserts that both jurisdictions treat ambiguities in insurance policies in the same manner. *Id.* Thus, the Florida and New York cases relied upon by the parties apply to the instant Motion.

to conflicting factual inferences that preclude summary judgment . *Id.* at 878 n.2. Such is the case here.

Here, as with the "occurrence" issue, there exists a factual dispute regarding whether the UV damage on the Vessel falls within the Policy's exclusion for wear and tear. On this point, the parties again present conflicting testimony. Defendant, on the one hand, relies on its expert's testimony that the "superyacht coating system has exceeded the coating system's service life," and will continue to degrade due to normal wear and tear regardless of whether the Vessel is regularly used or covered while not in use. (ECF No. 28-4 ¶¶ 19, 21). Accepting Mr. Revay's opinion, the "wear and tear" Policy exclusion may apply to exclude the loss at issue. Plaintiff, on the other hand, relies on its expert's testimony that the cause of the UV damage was "[the Vessel's exposure] to the sun in an accelerated process for an extended period of time, . . . the shrinkage happened more rapidly and resulted in the release of cracking." (ECF No. 46 ¶ 54). According to Plaintiff, this "accelerated" exposure to the sun is not one of the Policy's enumerated examples of "gradual or sudden loss."[12] Accepting Mr. Rossitto's opinion would mean that the "wear and tear" Policy exclusion would not apply and the damage would be covered under the Policy. Thus, in light of the conflicting evidence regarding the applicability of the Policy's exclusion for wear and tear, summary judgment is not appropriate. *See, e.g.*, *Rad Source Techs., Inc. v. Colony Nat. Ins. Co.*, 914 So. 2d 1006, 1008 (Fla. 4th DCA 2005) (denying summary judgment where disputed issue of material facts on whether policy exclusion applied).

---

[12] Plaintiff also argues that the principle of *ejusdem generis* (meaning "of the same kind"), supports an interpretation that the "gradual or sudden loss" exclusion does not include UV degradation or heat damage because there was no specific mention of UV degradation or heat damage, while other kinds of damage (e.g., corrosion, rust, dampness) are specifically mentioned in the Policy. (ECF No. 47 at 7-8). Because the undersigned concludes that there is a question of fact regarding the cause of the damage to the Vessel, the Court need not address Plaintiff's conclusory argument based on the principle of *ejusdem generis.*

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendant's Motion for Summary Judgment (ECF No. 27) be **DENIED**; and

2. Plaintiff's Motion to Strike Mr. Phillips' testimony (ECF No. 31) be **GRANTED IN PART WITHOUT PREJUDICE** as described in this Report.

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b) (allowing 14 days for written objections unless a different time is prescribed by the Court). Thereafter, within **seven (7) days** of any objections, the opposing party may file a response. Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Florida, on this June 10, 2021.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Kathleen Williams
    Counsel of Record